Nos. 12-3118 and 12-3134


IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT


KECHI TOWNSHIP and EMPLOYERS
MUTUAL CASUALTY COMPANY
**Plaintiffs/Appellants**


v.


FREIGHTLINER, LLC n/k/a DAIMLER TRUCKS
NORTH AMERICA, LLC
**Defendant/Appellee**

_____

**APPELLANT'S RESPONSE BRIEF ON CROSS APPEAL**
_____

**Appeal from the United States District Court
For the District of Kansas
Honorable Monti L. Belot, United States District Judge
District Court Case No. 10-1051-MLB**

Jennifer M. Hill, #21213
Kevin M. McMaster, #11903
MCDONALD, TINKER,
SKAER, QUINN & HERRINGTON, P.A.
P. O. Box 207
Wichita, Kansas 67201-0207
T: (316) 263-5851
F: (316) 263-4677
E: jhill@mtsqh.com
kmcmaster@mtsqh.com
*Attorneys for Appellants*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES .......................................................................... 1

II.  STATEMENT OF FACTS ........................................................................... 1

III. SUMMARY OF ARGUMENTS ................................................................. 8

IV.  ARGUMENTS AND AUTHORITIES ...................................................... 9

    A.   THE DEFENDANT CANNOT ESTABLISH THAT THE COURT'S ADMISSION OF EXPERT TESTIMONY WAS AN ABUSE OF DISCRETION.................................... 9

    B.   THE DEFENDANT CANNOT ESTABLISH THAT THE COURT'S DENIAL OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW WAS IN ERROR BECAUSE SUBSTANTIAL EVIDENCE SUPPORTED THE JURY'S VERDICT ...................... 18

V.   CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE ................................................................ 30

CERTIFICATION OF DIGITAL SUBMISSION ........................................... 31

CERTIFICATE OF SERVICE .......................................................................... 31

# TABLE OF AUTHORITIES

<u>Cases</u>

*BC Technical, Inc. v. Ensil Intern. Corp.,* 464 Fed.Appx. 689 (10th Cir. 2012) ......... 11, 17

*Dieker v. Case Corp.,* 276 Kan. 141, 73 P.3d 133 (Kan. 2003) .................................... 25-26

*Dorn v. BMW Of North America,* 2010 WL 3913226 (D. Kan. 2010) ............................ 27

*Farmers Ins. Co. Inc. v. Smith,* 219 Kan. 680, 549 P.2d 1026 (Kan. 1976) .................... 26

*Frederick v. Swift Transportation Co*., 616 F.3d 1074 (10th Cir. 2010) .......................... 10

*Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533 (10th Cir. 1996) ........... 18

*Jacobson v. Ford Motor Company,* 722 F.Supp. 2d 1250 (D. Kan. 2010) ....................... 26

*Paradigm Alliance, Inc. v. Celeritas Technologies, LLC,*
722 F.Supp. 2d 1250 (D. Kan. 2010) ................................................................................ 18

*Pekarek v. Sunbeam Products, Inc.,* 672 F. Supp. 2d 1161 (D. Kan. 2008) ..................... 19

*Webb v. ABF Frieght System, Inc.,* 155 F.3d 1230 (10th Cir. 1998) ................................ 18

*Yearous v. Niobrara,* 128 F.3d 1351 (10th Cir. 1997) ....................................................... 18

<u>Statutes</u>

Fed. R. Civ. Pro. R. 26(a)(1) ............................................................................................ 22

## I.   STATEMENT OF ISSUES ON CROSS-APPEAL

  A. Whether the District Court abused its discretion in admitting the testimony of plaintiff's experts, Jim Martin P.E. and Don Birmingham.

  B. Whether the District Court erred in denying Defendant's Motion for Judgment As a Matter of Law.

## III.   STATEMENT OF FACTS

As previously noted, the plaintiff, Kechi Township, is a Kansas incorporated municipality, located in South Central Kansas. Kechi Township owns real estate and a machine shop, where a small crew of workers perform road maintenance work.  (Aplt. App., pp. 249-250).  The property was destroyed by fire on December 17, 2007.  (Aplt. App., pp. 252-253).

### Kechi Experts' Investigation

Immediately following the December 17, 2007 fire, the Kechi Township and its insurer, Employers Mutual Casualty Company (hereinafter "EMC"), investigated the fire and hired Don Birmingham to investigate and determine the origin of the fire.  (Aplt. App., pp. 458-460).  Mr. Birmingham studied the fire patterns present in the building and concluded that the fire started in the right rear engine compartment of the 2000 FL70 Freightliner dump truck owned by Kechi Township.  (Aplt. App., pp. 346-349).  At that time, Mr. Birmingham requested the assistance of an engineer.   (Aplt. App., p. 351). EMC then hired Jim Martin, P.E., to investigate the fire and determine if there was evidence to support Mr. Birmingham's opinion that the fire originated in the engine compartment of the dump truck. (Aplt. App., p. 352).

At trial, Mr. Martin admitted that the fire in question was a "grounder" (meaning the building was burnt to the ground) and that he did not possess the expertise to pinpoint an area of origin. (Aplt. App., p. 505).  Mr. Martin testified that he initially looked for any potential heat source when he inspected the potential area of origin identified by Mr. Birmingham. (Aplt. App., pp. 521-522).   The next step he took was to look for any physical evidence to support the theory that the truck had started the fire.  (Aplt. App., pp. 520-521).  Mr. Martin found such evidence in the debris of the fire. (Aplt. App., pp. 521; 544-545).  Martin saw something he had never seen before in over 150 fires where vehicles are the suspected origin of the fire—starter components on the ground below the vehicle, burnt off their original location. (Aplt. App., pp. 522).    Further, he found evidence of a loose connection at the B+ terminal of the starter solenoid. (Aplt. App., pp. 545).  The loose connection, as well as the welding of two terminals at this connection, demonstrated that excessive resistance heating occurred at this connection.  (Aplt. App., pp. 545-546).  Mr. Martin testified that excessive resistance heating can occur when the engine is turned off and it would be a reliable theory for how the subject fire started. (Aplt. App., pp. 545-550).    After reaching these conclusions, however, Mr. Martin investigated further. (Aplt. App., pp. 553-556).

Mr. Martin found a closed top or "cap head" nut at the loose connection.  (Aplt. App., p. 545).  Such a nut creates a potential for loose connections because a nut can bottom out before optimal tightness is created.  Mr. Martin testified that the use of a "cap head" nut at this connection was a defect in the truck.  Mr. Martin also testified that the

2

use of a busbar at the subject connection was incorrect because the busbar would cause mechanical stress on the connection that could loosen the connection over time and cause the exact sort of loose connection that Mr. Martin opined started the fire. Mr. Martin did not simply rely on the physical evidence at the scene of the fire.

Working with Don Birmingham, the experts purchased a new exemplar of the battery cable in question. (Aplt. App., p. 569). The experts purchased a new exemplar starter. (Aplt. App., p. 556). The exemplar battery cable was purchased from Kansas Truck Center (where the subject FL 70 was purchased from). (Aplt. App., p. 569). Mr. Birmingham stated that he went to Kansas Truck Center and told them he needed "a positive battery cable for an FL 70 2000" and was provided the exemplar ultimately admitted into evidence as plaintiff's exhibit 20. (Aplt. App., pp. 1170-1171). This exemplar cable had a cap nut and a bus bar or depopulation stud. (Aplt. App., pp. 577-578). The new exemplar cable said "Freightliner" on the cable. (Aplt. App., p. 570).

Mr. Martin and Mr. Birmingham x-rayed the battery cable from the fire debris and the new battery cable purchased from Kansas Truck Center. (Aplt. App., p. 578). The cables were identical in internal components, size and design. (Aplt. App., p. 578).

Finally, Mr. Birmingham sought out another FL70 in use. (Aplt. App., p. 566). Mr. Birmingham located an FL70 and took pictures of the engine compartment. (Aplt. App., p. 566). This compartment had the exact same battery cable configuration as the subject truck and the exemplar new battery cable. (Aplt. App., p. 566). The FL70 exemplar truck had a cap nut at the B+ terminal of the starter solenoid and a bus bar on

the cable.  (Aplt. App., p. 566).

After locating the FL70 exemplar, Mr. Birmingham took photos of that truck and supplied the photos to Mr. Martin. (Aplt. App., p. 566).    Mr. Martin ultimately used the photos to support his opinions and attached several of the FL70 photos in his expert report. (Aplt. App., p. 566-567).

### **Defendant's Challenge At Daubert Hearing**

Pursuant to Defendant's request, plaintiff presented Mr. Martin and Mr. Birmingham for testimony at a formal *Daubert* hearing before the Court prior to the jury trial in this case.  (Aplt. App., p. 1139).  During the *Daubert* hearing, the defendant had the opportunity to cross-examine plaintiff's experts and establish that the opinions of these experts were neither reliable nor relevant. (Aplt. App., pp. 1139-1255).

Defendant attacked these experts' opinions and credibility a variety of ways. At the Daubert hearing, extensive questioning was performed to evaluate how the experts obtained the exemplar cable (exhibit 20). (Aplt. App., p. 1171). Defendant also questioned the basis for the expert's opinions and the ability of the experts to present their opinions without specific review of defendant's design drawings. (Aplt. App., pp. 1234-1240).

The Defendant also questioned whether the experts followed NFPA 921.  Mr. Birmingham testified that he followed NFPA 921 in his methodology and in ruling out other possible causes for the fire.

**Summary of Trial**

At trial, the plaintiff had three examples of the design of the FL70 connection of the positive battery cable at the B+ terminal to the starter solenoid: (1) the subject truck involved in the Kechi fire; (2) the new exemplar battery cable purchased by Don Birmingham; and (3) the exemplar truck located by Mr. Birmingham. The three examples were identical and all presented use of the cap head nut and the bus bar.

Plaintiff also presented evidence of design defect through the deposition of Mike Stohler, which was read into the record. (Aplt. App., p. 677). Mr. Stohler was a representative and long term employee of Delco Remy, the manufacturer of the starter motor on the subject FL70 truck. (Stohler Deposition, pp. 8-9). Mr. Stohler testified in regard to the use of a cap nut and a depopulation stud at the subject connection. (Stohler Deposition, pp. 41-43). Mr. Stohler indicated that the use of such a nut at this connection would potentially void a warranty and that Delco Remy (the manufacturer of the starter motor) would never recommend the use of such a nut. (Stohler Deposition, pp. 67-68). Mr. Stohler testified that a capped nut would potentially cause inaccurate readings of the torque rating which could lead to loosening of the connection over time. (Stohler Deposition, pp.69-70).

Mr. Stohler's deposition testimony also included his description of the problems with the use of a bus bar at such a connection. (Stohler Deposition, pp. 41-43). Mr. Stohler stated that Delco Remy did not recommend such a bus bar connector because it would cause mechanical stress on such a joint which could lead to loosening of the

connection over time. (Stohler Deposition, pp. 42-43). Mr. Stohler's testimony supported plaintiff's expert's opinions, stating a loose connection must be avoided. (Stohler Deposition, pp. 8-9). When asked why loose connections were problematic, Mr. Stohler testified that loose connections that go to ground cause "sparks" to "fly". (Stohler Deposition, p. 43).

Defendant presented testimony from its expert, John Maurus. (Aplt. App., p. 807). Mr. Maurus generally testified that he could not determine the cause of the subject fire. (Aplt. App., pp. 864-864).  On cross-examination, Mr. Maurus admitted all of the necessary facts to establish that the use of bus bar and cap head nut at the subject connection could result in a loose connection.  (Aplt. App., p. 913). As is evidenced from the transcripts, on cross-examination, Mr. Maurus examined Exhibit 20, the new exemplar cable. (Aplt. App., p. 915). Mr. Maurus agreed with plaintiff's counsel that mechanical stress caused by the use of the busbar could cause a loose connection over time essentially concurring with and supporting plaintiff's theory of design defect. (Aplt. App., pp. 915-918).  Maurus further testified that subject connection with a busbar with the everyday use of the vehicle could cause sufficient mechanical stress to loosen the nut on the stud at the terminal over time. (Aplt. App., p. 918).

Defendant presented testimony from Lance Romig regarding his experience and familiarity with the manufacturing process of the Freightliner FL70 model. (Aplt. App., pp. 944-945). He generally testified that he was not "familiar" with the use of a cap head nut on the positive battery cable at the B+ terminal on the starter solenoid (no mention

6

was made of the use of a busbar). (Aplt. App., p. 953).   On cross-examination, Romig admitted that he had no information or evidence to controvert plaintiff's argument that the new exemplar cable purchased at Kansas Truck Center by Mr. Birmingham (plaintiff's exhibit 20) was identical to the cable on the subject truck at the time of sale. (Aplt. App., p. 990).

Defendant presented *no* physical evidence to controvert the findings of the plaintiff's witnesses and experts. The defendant cross-examined plaintiff's witnesses and presented its own witnesses to support its defense that the use of the cap head nut was not Freightliner's design. (Aplt. App., p. 953).  However, the battery cable from the fire; the new exemplar battery cable and the exemplar battery cable from the truck located by Mr. Birmingham controverted defendant's witnesses' testimony.

Defendant presented no evidence in the form of witness testimony or otherwise regarding the use of the busbar. The *defendant* chose to go no further. Again, the physical evidence at trial established that the busbar was part of the Freightliner design of the truck.  The physical evidence included the battery cable from the truck in the fire; the new exemplar battery cable and pictures of the exemplar battery cable from the FL70 truck located by Mr. Birmingham.

The defendant did not present any of its own design drawings to support its defense. The defendant did not present another FL70 exemplar to demonstrate that the plaintiff's theory was unreliable or inaccurate. The defendant did not present testimony from the design engineers or other individuals at Freightliner to testify that the FL70

positive battery cable did not include a "cap head" nut or a busbar. The defendant hinted at, argued, and inferred that the design of the FL70 was contrary to the evidence presented by plaintiff. But the defendant ultimately produced no direct evidence, physical or otherwise, to discredit plaintiff's case. The jury believed the plaintiff's theory and found the defendant product was defective and caused the fire. (Aplt. App., p. 1134).

## III.   SUMMARY OF KECHI TOWNSHIP'S ARGUMENTS ON CROSS APPEAL

This Court must focus on the standard of review for those issues presented by the defendant on cross-appeal. If the proper standard of review is applied, the trial Court's rulings on these issues must be affirmed.

As it relates to the admission of plaintiffs' experts' testimony, the first question is whether the Court performed its "gatekeeping" function. The record before this court very clearly establishes that the trial Court in this case closely evaluated the experts for reliability. In this case, the Court even heard from the experts, in person, during a *Daubert* hearing and partially restricted the testimony of one of plaintiff's experts. It is clear from the record that the trial court performed it duty as a gatekeeper. There is absolutely no evidence in this case that the trial Court abused its discretion in allowing the testimony of Martin and Birmingham at trial. Both experts methodically conducted their investigation into the fire and tested their theories through repeated and ongoing investigation activities that lasted for over a year.

In reviewing plaintiff's evidence at trial, this Court cannot weigh the evidence, pass on the credibility of witnesses or substitute its conclusions for that of the jury. The

8

plaintiffs presented a claim of product liability in this case. The plaintiffs' case relied on physical evidence, fire debris, experts' investigations, testimony from fact witnesses about the truck's performance prior to the fire, and deposition testimony from a Delco Remy representative to establish that FL70 in their possession started a fire in their machine shop and that a design defect in the truck was the reason for the fire. The defendants relied on cross-examination, their own expert and the *absence* of a design drawing to argue there was no defect. Kansas law simply does not require that a party produce a design drawing to prove strict liability. The parties presented their competing versions of the facts and submitted them to the jury. There is no reason for the Court to overturn the district Court's denial of a motion for judgment as a matter of law. Rule 50 states motions for judgment as a matter of law can only be granted when "the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." In this case, there was reasonable evidence in the record to support plaintiff's case.

The trial Court's rulings on the issues presented in cross-appeal should be affirmed.

## IV.    ARGUMENTS AND AUTHORITIES

### A.    THE DEFENDANT CANNOT ESTABLISH THAT THE COURT'S ADMISSION OF EXPERT TESTIMONY WAS AN ABUSE OF DISCRETION

**Standard of Review**

In evaluating the admission of expert testimony, the Court of Appeals must first determine whether the trial court applied the proper standard and performed its

"gatekeeper" function. After this determination is made, the Court of Appeals reviews a

district court's determination regarding the admissibility of expert testimony under an

abuse of discretion standard:

> "[W]e review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance. We then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion." *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir.2003). "We will not, however, disturb a district court's ruling absent our conviction that it is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1232 (10th Cir.2004). On review "**we are concerned with the trial court's performance of its obligation under Rule 702 and *Daubert*, not upon the exact conclusions reached to exclude or admit expert testimony**." *Id.*

*Frederick v. Swift Transportation Co.*, 616 F.3d 1074, 1082 (10th Cir. 2010) (Emphasis

added).

### The Court Properly Performed Its Gatekeeper Function and its Ruling was Not Arbitrary, Capricious, Whimsical, Unreasonable or Erroneous

The defendant's argument regarding the admission of plaintiffs' expert testimony

should be disregarded in part because the defendant is applying an incorrect standard of

review throughout its argument.  There is no challenge in the defendant's arguments to

whether or not the trial court performed its gatekeeping function properly.  Specifically,

in the rulings challenged on cross-appeal, the trial court reviewed the briefs of the parties,

the reports of the witnesses and the court even conducted a formal *Daubert* hearing.  In is

undisputed that the Court sufficiently performed its role as gatekeeper.

Repeatedly, defendant argues that the "Trial Court erred" or "committed error" in

10

allowing the testimony of plaintiffs' experts. In order to overturn the Court's rulings, on appeal, the defendant must establish that the trial court *abused its discretion* by allowing the experts to testify. The defendant does not argue this standard and further, there is absolutely no evidence that the rulings allowing the plaintiffs' experts to testify were an abuse of discretion. This court has correctly applied the abuse of discretion standard when an appealing party argues about error in the application of *Daubert,* noting that the Court of Appeals affords "substantial" deference to the judge's application of *Daubert*. *BC Technical, Inc. v. Ensil Intern. Corp.,* 464 Fed. Appx. 689, 704 (10th Cir. 2012).

    1.  <u>Testimony of Jim Martin</u>

In evaluating whether the Court abused its discretion, this Court should review the trial Court's opinion that is being challenged. In the current matter, the Court's opinion on the admissibility of Martin's testimony can be found at page 41 of the Appellant's Appendix, and is document 162 on the docket. A review of this opinion clearly establishes an appropriate basis for the Court's ruling. The defendant presents absolutely no argument that the opinion is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous. As such, this Court's analysis of this issue can stop here. There is no argument to the proper standard of review and no evidence in the record that the Court abused its discretion in allowing Martin to testify. As such, the cross-appeal on this issue should be denied.

A closer inspection of the underlying issue on appeal (whether the trial Court abused its discretion) demonstrates even more clearly that the Court's opinion on the

admissibility of this expert's testimony should be affirmed.

The plaintiffs hired Jim Martin to assist Don Birmingham in formulating a hypothesis about what caused the fire in the subject truck. As presented in his expert report, deposition testimony and ultimately at trial, Martin provided an expert engineering opinion about the electrical components in the subject vehicle. Martin's opinions were based on an extensive investigation conducted over many months.

When Martin investigated the case and inspected the truck he found evidence of a loose connection at the starter motor and extreme heat running through an energized connection at B+ terminal of the starter solenoid. Martin participated in numerous on- site inspections and inspections of the truck after it was removed from the fire scene. Martin obtained an exemplar cable and studied it, including an x-ray to compare it to the subject cable from the fire. Martin studied pictures of an exemplar truck, showing an identical wiring configuration as the subject truck. Martin reviewed documents from Delco Remy (the manufacturer of the starter motor) regarding the use of correct component parts on the starter motor. After review of all these pieces of evidence, Mr. Martin provided expert testimony which opined that the defective design of the subject truck caused a loose connection at the starter. In turn, this loose connection in the wiring caused excessive resistance to the flow of current resulting in extreme heat, which started the fire.

As at the trial Court level, defendant's primary argument on appeal is that Martin did not review design drawings in order to render his opinion that subject truck was

defective. There is no requirement that in order for an expert to find a product defect, that the expert must review design drawings. There is no such authority and the trial Court dismissed this notion in its denial of defendant's Motion to Exclude Mr. Martin's testimony.

Martin opined that the truck, as constructed, was defective because the connection from the battery to the starter motor was not secure and the defendant used a cap nut and busbar. The physical evidence in this case speaks for itself. The evidence at trial was that the Freightliner FL70 truck had never been repaired or modified as it related to the starter. The evidence at trial was that the Freightliner truck had consistently had problems starting, according to the witnesses that regularly operated the truck. The evidence at trial was that the subject Freightliner truck, following the fire, had a very loose connection between an energized battery and the starter motor, which occurred because the wrong kind of nut was used to secure the connection and because of the use of a busbar. All of these pieces of evidence support Martin's opinions that the truck started the fire. This evidence did not require Martin to study design drawings to render an opinion. His opinion was based on physical evidence and investigative activities.

Defendant's argument that Martin cannot provide opinions because he did not review design documents does not challenge Martin's methodology in presenting expert electrical engineering opinions. To exclude Martin's testimony because he did not inspect design drawings is not appropriate in this case because Martin does not opine about what the design documents said. Martin's opinions clearly state that the subject truck was

13

defective and why.  This opinion supports plaintiff's claims as it relates to the subject vehicle and any challenge to this argument were appropriately reserved for defense counsel's cross-examination.

The defendant challenges Martin's opinions because he does not address the evidence that supports defendant's theory that the subject fire started in the trash can. This argument ignores the simple fact that Martin's opinions have never been designated as "origin" opinions.  Martin's opinions, instead, are limited to opinions about the failure of the electrical components which resulted in a fire.  The separation of cause and origin opinions into two experts is clearly appropriate in the current matter and in conformance with Rule 702.  Mr. Martin did not read the burn patterns in the building and evaluate possible causes of the fire.  Mr. Martin specifically stated in his deposition and at trial that he did not provide opinions about the origin of the fire.  He presented himself as a "cause" expert and relied upon Mr. Birmingham's expertise in locating the origin of the fire.

Martin investigated the evidence at the fire scene and determined that the subject Freightliner truck had a loose connection and that there was clearly evidence of an energized connection at the time of the fire.  Further, Martin opined that the failure of the subject truck to have an open ended nut, as opposed to a cap head nut, resulted in a loose connection with excessive resistance.   Following review of the deposition of Mike Stohler, Martin also opined that the use of the busbar was negligent because it allowed mechanical stress to loosen the connection at the B+ terminal of the starter solenoid.

14

The arguments presented by the defendant on appeal outline appropriate grounds for cross-examination of Martin.  The arguments however, absolutely fail to demonstrate an abuse of discretion by Judge Belot in allowing Martin to testify.  These arguments were used at trial to attempt to discredit Martin's opinions but were clearly not convincing based on the jury's verdict.  The arguments presented on appeal are simply not the proper ground to exclude Martin's testimony.

There is absolutely *no* evidence in the record on appeal that the trial court abused its discretion in allowing the plaintiff to present expert testimony from Jim Martin.

2. Testimony of Don Birmingham

Defendant contends that admission of Mr. Birmingham's opinions was in error and ultimately an abuse of discretion. Again, this Court should review the district court's opinion that is being challenged.  In the current matter, the Court's opinion on the admissibility of Birmingham's testimony can be found at pages 38-39 of the Appellant's Appendix.  Again, on appeal defendant presents absolutely no argument that the opinion is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous.  As such, this Court's analysis of this issue can stop here. There is no argument to the proper standard of review and no free standing evidence in the record that the Court abused its discretion in allowing Birmingham to testify.  As such, the cross-appeal on this issue should be denied.

A closer inspection of the underlying issue on appeal (whether the trial Court abused its discretion in allowing Birmingham to testify) demonstrates even more clearly

that the Court's opinion on the admissibility of this expert's testimony should be affirmed.

The only challenge presented to Birmingham's "origin" opinion is whether he complied with NFPA 921 in ruling out other potential causes of the fire, namely the argument that the fire started in the trash can from hot ashes.  This argument was presented to and rejected by the trial court.  The rejection of this argument simply does not constitute an abuse of discretion.

Birmingham investigated the subject fire with without any pre-conceived ideas on causation. After studying the scene for several hours, Birmingham formed an initial hypothesis that the Freightliner truck may have started the fire based on the burn patterns of the fire.  Relying on his extensive experience as an origin investigator, Birmingham believed after studying the scene that the fire originated in the truck.  His testimony and opinions are highly relevant and meet the threshold requirements for *Daubert*. His testimony and opinions rely the physical evidence at the scene, the burn patterns and the destruction of property at the fire.

Defendant argues that Birmingham is unreliable because he did not give enough time and attention to the Kechi employees who might have had information about an alternative source of the fire.  The defendant further argues that Birmingham's opinion is unreliable because he did not make an extensive report about his conversations with Kechi employees in spite of his testimony that he spoke with the employees during his investigation and used their knowledge to formulate his opinions.

16

The critique of Birmingham's report and opinions are, at best, the proper subject for cross-examination. All of the arguments presented by the defendant about specific evidence of other possible causes of the fire merely lend to the weight and credibility that the finder of fact should give to Birmingham's opinions. These arguments do not establish that the trial court abused its discretion or that Birmingham's testimony is so unreliable it should be excluded. In this case, Birmingham had specific ideas about where the fire started. His interview of various township employees did not change his observations. In *BC Technical, Inc. v. Ensil Intern. Corp.,* 464 Fed. Appx. 689 (10th Cir. 2012), the appealing party argued that the failure of an expert to include analysis of specific evidence made their opinions inadmissible. The trial court and this Court ruled in favor of admissibility noting "Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *BC Technical*, 464 Fed. Appx. at 704. Plaintiff contends Birmingham's opinions were far from "shaky" but based on the experience of having investigated over 1,000 fires and working through a year long investigation process to confirm his initial hypothesis.

Birmingham specifically testified that he followed NFPA 921 in formulating his opinions. There is no evidence presented in defendant's motion to establish that Birmingham failed to follow NFPA 921. The defendant did not present any testimony or evidence to support a claim that Birmingham failed to follow NFPA 921. Instead, defendant argued he just did not give other explanations for the fire "enough" attention.

Such an arbitrary argument is not feasible since there is no explanation of what "enough" attention would be.  As such, again, these arguments focus on the weight and credibility of this experts opinions and not on his admissibility.

The proper way for defendant to present argument against Birmingham's opinions occurred at trial: cross-examination, presentation of contrary evidence (witness Tavis Leake) and opinions and instruction on the burden of proof. The Court's admission of the testimony should be affirmed.  There is no argument to support any claim that the admission was an abuse of discretion.

## B. THE DEFENDANT CANNOT ESTABLISH THAT THE COURT'S DENIAL OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW WAS IN ERROR BECAUSE SUBSTANTIAL EVIDENCE SUPPORTED THE JURY'S VERDICT

### Standard of Review

The District Court repeatedly denied the same argument presented by defendant on a motion for judgment as a matter of law. This Court reviews such a denial *de novo* and under the same standard applicable in district court. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1546 (10th Cir.1996).  Despite the de novo standard of review, this Court may upset the jury's conclusion "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998) *citing Yearous v. Niobrara County Mem. Hosp.,* 128 F.3d 1351, 1353 (10th Cir.1997). Under this standard of review, the Court of Appeals may not "weigh the evidence, pass on the credibility of witnesses, or substitute our conclusions for that of the jury." *Id.* Finally, it should be noted that such

motions are to be "cautiously and sparingly granted".  *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, 722 F. Supp. 2d 1250, 1262 (D. Kan. 2010).

### The Court Properly Denied Defendant's Motion For Judgment As a Matter of Law Because Plaintiffs Presented Substantial Evidence To Support Their Claim

The vast majority of defendant's argument in regard to its failed Motion for Judgment as a Matter of Law focus on the weight to be given evidence presented at trial. As noted in the standard of review section, there is absolutely no opportunity under Rule 50 to challenge a jury's verdict because a party finds the evidence supporting that verdict to be weak or subject to challenge.

The arguments presented by the defendant in its appeal are not new arguments and they present no compelling reason to overturn the Court's ruling on the motions for judgment as a matter of law.  At the summary judgment stage, the defendant argued that plaintiffs failed to establish a prima facie case of strict liability under Kansas law because defendant argued that plaintiffs could not show that the alleged defect in the truck was in part of the truck design. The Court denied this motion, stating that circumstantial evidence of a defect is sufficient under Kansas law.  *Pekarek v. Sunbeam Products, Inc.*, 672 F.Supp. 2d 1161, 1190 (D. Kan 2008). Whether the jury believes one parties evidence over another is an issue of fact.

Again at the close of plaintiff's evidence at trial and in a renewed motion for judgment as a matter of law after trial, the defendant argued the exact same theories. Each time, the Court ruled that the plaintiff's presented sufficient evidence to claim a

product defect caused the subject fire.  In its cross-appeal, defendant again argues that there was insufficient evidence for the case to go to the jury. These arguments do not present sufficient findings to overturn the Court's ruling(s) on the various motions for judgment as a matter of law.  To the contrary, the arguments, again, merely present competing views of the evidence presented to the jury. The District Court's rulings should be affirmed.

    1.  <u>Plaintiff's Theory of Liability</u>

The plaintiff clearly stated throughout trial that the defendant was negligent in the use of a bus bar and a cap nut at the B+ connection between the battery and the starter solenoid.  This argument was supported by evidence in a variety of forms.  Rather than address the argument presented by the plaintiffs, defendant, again, attempts to mischaracterize the evidence and arguments.  The use of the bus bar and cap nut ultimately led to a loose connection at the B+ terminal.  This loose connection is very dangerous, as testified to by Mike Stohler. This loose connection caused the subject fire, as testified to by Jim Martin.

Evidence of the defective design and causation was presented through the testimony of Jim Martin, plaintiff's expert, the deposition testimony of Mike Stohler, Delco Remy's in-house expert, cross-examination of defendant's own expert witness (who agreed that the mechanical stress present at the subject terminal could loosen over time and cause resistance heating) and through the physical evidence produced at trial, including fire debris and multiple exemplar parts.

Various witnesses testified about the use of a cap nut at the B+ terminal. Various witnesses indicated the problems with such a nut, including the fact that such a nut could potentially provide an inaccurate torque rating when being screwed onto a bolt at such a connection. Defendant's own witness Lance Romig stated that he did not recall seeing such nuts at this connection when he saw FL70's in production.

Mr. Stohler indicated that such a nut would potentially void a warranty and that Delco Remy would never recommend the use of such a nut, due to the possibility of a capped nut to cause inaccurate readings. Mr. Stohler's deposition testimony, which was read to the jury, also included his description of the problems with the use of a bus bar at such a connection as it related to the mechanical stress on such a joint. Therefore, there was testimony from witnesses Jim Martin, Mike Stohler, and John Maurus that established that mechanical stress on the joint could lead to a loose connection over time.

Contrary to defendant's argument, Jim Martin specifically opined that the use of the cap nut was a defective condition. Martin truthfully admitted that he could not specifically state when the connection became loose, but the use of such components (busbar and cap nut) contributed to the condition that caused the fire. The defendant argues about whether or not Mr. Martin's opinions and testimony support the plaintiff's theory of liability. This argument is a proper argument for a jury's analysis and evaluation during trial but cannot be the basis of a Motion for Judgment as a Matter of Law.

It is undisputed that the plaintiff's case relied primarily on the physical evidence at

21

the fire scene.  The debris from the fire provided all of the information necessary to establish that the fire started as a result of a loose connection between the starter solenoid and the truck's two large batteries.  The debris from the fire and the plaintiff's witnesses' testimony (that they never altered, adjusted, repaired or even touched the truck's starter motor) established that the truck's wiring was the same as it had been when it left the defendant's control. The physical evidence, when viewed in conjunction with the exemplars located by the plaintiffs' experts, established that the subject FL70 truck was not altered from its original manufactured state.

Further investigation and discovery revealed that the use of a cap nut and a bus bar at the B+ connection was a negligent design because (1) such a connection cannot reasonable be tested for proper torque at the time of manufacture and (2) because the use of a bus bar caused mechanical stress which may result in a loose connection over time. Freightliner's own representatives acknowledged that a cap nut could be problematic. Freightliner's own expert acknowledged the effect of mechanical stress from using a busbar on such a connection.

The evidence before the jury established that one or both of the alleged defects caused the loosening of the subject connection.  Alternatively, the jury could have determined that due to the cap nut's potential for inaccuracy in torque rating, that the subject truck left the manufacturer with a loose connection already.  Either theory was appropriate for the jury's consideration and provided sufficient evidence to survive a Motion for Judgment as a Matter of Law.

2. <u>Design Drawings</u>

There is general argument from the defendant that defendant's design did not include a cap nut and an *implied* argument (though never clearly stated) that defendant's design did not include a bus bar. The defendants never produced any direct evidence to support these defenses. The defendants did not provide testimony or documents to directly controvert the plaintiff's contentions that the defects in the truck (the use of the cap nut and bus bar) were part of the truck's design. The defendant failed to produce evidence to support its defenses at its own risk. Rule 26(a)(1) requires that "a party must, without awaiting a discovery request, provide to the other parties…all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." FED. R. CIV. PRO. R. 26(a)(1) (2012).

The defendant never produced a design drawing though regularly and often complained that the plaintiff never requested one. The physical evidence at trial was sufficient to establish a design defect in the Freightliner FL70. The physical evidence of the subject truck showed (1) a cap nut and (2) a busbar. The evidence from the new exemplar cable purchase showed (1) a cap nut and (2) a busbar. The evidence from the exemplar FL70 photographed by Don Birmingham showed (1) a cap nut and (2) a busbar. The x-ray of the subject truck's positive battery cable and the new exemplar cable (Plaintiff's Exhibit 20) showed identical construction and Mr. Martin testified that in his opinion they were the same cable. What did the defendant do to controvert the physical

23

evidence presented by plaintiff at trial? Nothing.

While defendant criticizes and belabors the plaintiff's use of circumstantial evidence to prove a design defect, plaintiff's contend that if the design were contrary to plaintiff's argument, defendant had in its possession any and all necessary evidence to controvert plaintiffs' theory of design defect. Defendant could have produced another exemplar FL70, defendant could have produced design drawings, defendant could have produced an in-house engineer—all of whom could have presented evidence that the configuration found in the subject truck, the exemplar cable and the exemplar truck were not an accurate representation of the defendant's design. The defendant produced no such evidence and pursuant to Rule 26(a)(1), it can only be presumed that such evidence does not exist (otherwise defendant would have been required to produce it).  Alternatively, if such evidence exists and defendant did not produce it, then defendant has violated the most basic rules of discovery in its initial disclosures, which were supplemented four times during the litigation process.

Regardless of whether such a drawing exists, sufficient evidence was presented to the jury to establish a design defect.  Kansas law does not require a spec sheet and design drawing to present a strict liability claim to a jury. Sufficient evidence was presented to the jury regarding the fact that the loose connection at the B+ terminal of the starter solenoid caused the subject fire and the loose connection was the result of a design defect.  The plaintiff's contentions did not require that the jury speculate on the causes of the fire.  The defendant's arguments at trial were essentially that there were many

24

potential sources for the fire and the cause of the fire was undetermined.  The parties'

competing arguments were presented to the jury and appropriately considered.

3.  Defect At the Time of Manufacture

The plaintiff's evidence about the condition of the truck at the time its

manufacture was, again, supported by the physical evidence.  Defendant, at trial, could

not and did not explain why the subject FL70 and the exemplars located by plaintiffs'

experts were identical. Therefore, attempts by defendant to argue that the truck had been

altered fell short.  At the time of the sale from Freightliner's authorized dealer (Kansas

Truck Center) to Kechi Township, the evidence established that there had been no

alterations to the positive battery cable.

Defendant has repeatedly argued that circumstantial evidence cannot be the basis

for plaintiff's case.  In the current matter, the defendant previously argued that the

plaintiff's case should fail because there was not direct evidence of the tightness of the

truck's wiring connections at the time it left the manufacturer. This argument was denied

at summary judgment and should be denied by this Court as well.  Based on plaintiff's

theory, whether the subject cap head nut was properly tightened when it left the

defendant's control is only part of the theory of liability.  Plaintiff's theory is that the use

of the cap head nut and busbar could cause a loose connection due to mechanical stresses

on the joint. Plaintiffs argued that this loose connection would be a natural result from

defendant's design defect.

Plaintiff admits that its evidence that the truck left Freightliner's control with the

defective parts was circumstantial. But plaintiffs' experts bolstered this evidence with the use of exemplars that matched the subject FL70. Each piece of evidence made plaintiff's theory less circumstantial and more reliable. The FL70, the replacement cable and the exemplar truck had an identical wiring configuration. The evidence presented in plaintiff's case was sufficient to submit the case to the jury. The jury was persuaded by the plaintiff's argument and evidence and found that the truck was defective due to the use of the cap nut and bus bar.

As noted at the time of summary judgment and during trial, circumstantial evidence is appropriate evidence of a defect at the time equipment is manufactured. In fact, the Kansas Supreme Court has stated that circumstantial evidence about whether a product was defective at the time it left the manufacturer is appropriate in a product liability case. *Dieker v. Case Corp.*, 276 Kan. 141, 147, 73 P.3d 133 (Kan. 2003). In this case, the plaintiff argued that it purchased a tractor from an authorized dealer and performed no repairs or alterations to the part of the tractor that was alleged defective. Similar to the defendant in this case, the defendant in *Dieker* argued that there was not enough evidence to support that the defect existed when it left the manufacturer's control, and in fact, brought in quality assurance tests from the very piece of equipment involved in the fire. (In the present case, Freightliner did *not* bring in any evidence beyond speculation to support its defense that the subject truck was altered.) In *Dieker,* the plaintiff and other witnesses testified that no one had performed any modifications to the area of the tractor where it was alleged the fire started. The Kansas Supreme Court noted

that such testimony was sufficient to survive a motion for judgment as a matter of law. Similarly, the plaintiffs' witnesses in this case testified that they never altered or performed repairs to the starter motor.

The other cases cited by defendant are all clearly distinguishable from the current matter. In *Farmers Ins. Co. Inc. v. Smith*, the plaintiff's expert opined that a loose connection caused an electrical fire but found no physical evidence in the fire debris of any loose connection. *Farmers Ins. Co. Inc. v. Smith*, 219 Kan. 680, 687, 549 P.2d 1026 (Kan. 1976). (Compare to this case where the loose connection was located and the physical evidence was placed before the jury for consideration.) In *Jacobson v. Ford Motor Co.*, the age of the automobile was not the underlying issue, but the fact that the plaintiff failed to show any defect and in fact argued that the dealer that he bought the automobile from did not properly service the vehicle and *caused the defect*. *Jacobson v. Ford Motor Co.*, 199 Kan. 64, 67, 427 P.2d 621 (Kan. 1967). In the current matter, the plaintiff does not allege that Kansas Truck Center caused the defect, as such, reliance on *Jacobson* is inappropriate and misplaced. Finally, the defendant relies on *Dorn v. BMW of North America, LLC*, where the plaintiff failed to point to any specific defect in the subject vehicle, alleging generally a "nonspecific manufacturing defect". *Dorn v. BMW of North America, LLC*, Case No. 09-1027-WEB, 2010 WL 3913226, at *7 (D. Kan. 2010). Further, in *Dorn,* there was no identified cause of the fire by an expert or any other witness. *Dorn,* 2010 WL 3913226, at *10. Again, compare these facts to the current case where the cause of the fire was specifically identified and the defect that caused the

27

fire were clearly presented to the jury. Therefore in *Dorn*, to allege a defect existed at the time of the manufacture, when the plaintiff does not even explain what the defect is, was inappropriate. These cases are not instruction in the current case which presents substantially different facts and legal issues.

In this case, the plaintiffs contended that the design of the truck was defective in the use of the bus bar and cap nut. The plaintiffs argued that the truck left the manufacturer with these defects in place based on its investigation and the exemplars located. There was no information presented by defendant to controvert this contention.

Defendant speculated that due to a change in the type of bed attached to the back of the truck that there was "no doubt" a change to the wiring system of the truck. (Such an argument is again made in the appeal brief, p. 13). This argument is pure speculation as there is no testimony from any witness that the modifications to the dump bed altered the starter motor's wiring configuration. The defendant also argued that in replacing the clutch that "certainly" the subject wiring systems were altered. Again, defendant did not present testimony from a mechanic or other knowledgeable witness to support its argument. These arguments were presented and subsequently *rejected* by the jury. The jury determined by its verdict that there was no evidence of any alteration to the truck's wiring system and that as a result, the truck was defective at the time it left the manufacturer.

The defendant continues to argue to the court that the verdict should be overturned due to defendant's circumstantial arguments that the positive battery cable "must have"

28

been altered during repairs. Defendant does not explain why its circumstantial evidence is sufficient to overturn the jury's verdict but plaintiff's circumstantial evidence is not sufficient to support it.  These arguments focus on the weight of the evidence that supports each party's argument.   A motion for judgment as a matter of law is not the proper place to argue the weight and credibility of evidence.

The plaintiff presented sufficient evidence to the jury to argue that the product was defective when it left the manufacturer.  The jury was persuaded by these arguments and a Motion for Judgment as a Matter of Law is not a proper venue to argue the weight and credibility of evidence.

The defendant's appeal asks that this Court do what it cannot—substitute its evaluation of the evidence for that of the jury.  A motion for judgment as a matter of law cannot be granted merely because the defendant disagrees with the plaintiff's arguments. There is substantial, competent, and reasonable evidence to support the plaintiff's theories on liability and the jury awarded its verdict based on this evidence.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs request that the district court's rulings during trial related to the admission of expert testimony and denial of motion for judgment as a matter of law be affirmed.  The defendant's arguments challenge the weight to be given to various pieces of evidence but fail to demonstrate any reversible error.

Respectfully submitted,

s/ Jennifer M. Hill
Jennifer M. Hill, #21213

29

Kevin M. McMaster, #11903
MᴄDᴏɴᴀʟᴅ, Tɪɴᴋᴇʀ, Sᴋᴀᴇʀ,
   Qᴜɪɴɴ & Hᴇʀʀɪɴɢᴛᴏɴ, P.A.
P. O. Box 207
Wichita, Kansas  67201-0207
T: (316) 263-5851
F: (316) 263-4677
E: kmcmaster@mtsqh.com
   jhill@mtsqh.com
Attorneys for Plaintiffs/Appellant

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 8,546 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2002 (10.6775.6735) SP3, in 14-point type, Times New Roman.

s/ Jennifer M. Hill
_____
Jennifer M. Hill (#21213)
Attorney for Plaintiffs/Appellants
Dated:  February 15, 2013

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that no privacy redactions were necessary and that the digital submission of this Brief is an exact copy of the hard copies filed with the Clerk; that the digital submission was scanned for viruses using Trend Micro OfficeScan v6.5, Version

2.633.0, said virus scan being conducted on a daily basis, and, according to the program, said digital submission is free of viruses.

s/ Jennifer M. Hill
Jennifer M. Hill

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February, 2013, I electronically filed the foregoing **APPELLANT'S RESPONSE BRIEF ON CROSS APPEAL** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Kenneth R. Lang
Matthew K. Holcomb
HINKLE LAW FIRM L.L.C.
8621 E. 21st Street North, Suite 200
Wichita, Kansas  67206-2991
 *Attorneys for Freightliner*

Alan Epstein
Hall & Evans, LLC
1125 17th Street, Ste 600
Denver, CO 80202

and that on the 18th day of February, 2013, seven (7) hard copies of the Appellant's Response Brief on Cross-Appeal will be shipped via Federal Express Overnight delivery to:

CLERK OF THE UNITED STATES COURT OF APPEALS
   FOR THE TENTH CIRCUIT
The Byron White U.S. Courthouse
1823 Stout Street
Denver, Colorado 80257

31

s/ Jennifer M. Hill

Jennifer M. Hill